JAMES WILLIS BALLARD, as Receiver of the KEYSTONE GUARD, Appellant, v. SARATOGA NATIONAL BANK OF SARATOGA SPRINGS, N. Y., Respondent.

Third Department, July 6, 1922.

Banks and banking — voluntary liquidation of bank — claim to assets distributed to holder of stock of said bank — determination that said stock was not held by another bank but by its cashier individually sustained.

In an action by the receiver of a creditor of a bank, which went into voluntary liquidation, against the successor of another bank alleged to have held stock of the bank which went into voluntary liquidation, and to have received a distribution of the assets based thereon to the prejudice of the plaintiff, it was claimed by the plaintiff that said stock, although apparently in the name of the cashier of the other bank, was in reality owned by said bank, while the defendant contended that the legal title to said stock was in the cashier as an individual. The stock in question had been deposited as security for the payment of the note of a third person.

Held, on all the evidence, that a judgment in favor of the defendant should be affirmed.

COCHRANE, P. J., dissents.

APPEAL by the plaintiff, James Willis Ballard, from a judgment of the Supreme Court in favor of the defendant, entered in the

---

* Now Civ. Prac. Act, § 347.— [REP.

office of the clerk of the county of Saratoga on the 17th day of January, 1922, upon the dismissal of the complaint by direction of the court upon a special verdict, and also from an order entered in said clerk's office on the 31st day of January, 1922, denying plaintiff's motion for a new trial made upon the minutes.

*Merle I. St. John* [*Arthur Ofner* of counsel], for the appellant.

*Butler, Kilmer & Corbin* [*Walter P. Butler* and *Harold H. Corbin* of counsel], for the respondent.

H. T. KELLOGG, J.:

The complaint, among other things, alleged: That the Audubon National Bank in October, 1911, went into voluntary liquidation; that in the months of December, 1911, and April, 1912, it distributed to its stockholders large sums of money which were otherwise necessary for the payment of its debts; that the Citizens National Bank of Saratoga Springs was then the owner of twenty-five shares of the capital stock of the Audubon National Bank; that such stock had been issued to it in the name of Charles D. Thurber, its cashier; that the title to said stock was held by Thurber, as the agent of and for the use and benefit of the Citizens National Bank; that, in the distribution of the assets of the Audubon National Bank, the Citizens National Bank accepted and received the sum of $875. The Keystone Guard, of which the plaintiff is receiver, was at all times a creditor of the Audubon National Bank and, it is claimed, was prejudiced by the distribution. This defendant is the successor of the Citizens National Bank of Saratoga Springs. Judgment was demanded in the complaint for the sum of money thus distributed to the Citizens Bank.

The following facts were proven upon the trial: One Blackburn in November, 1910, borrowed $5,000 of the Citizens National Bank upon a promissory note. As security for the loan he deposited with the bank forty shares of the stock of the Audubon National Bank then owned by him and standing in his name. In September, 1911, the forty shares of stock were surrendered to the Audubon National Bank and in place thereof a new certificate for forty shares was issued to Charles D. Thurber. In January, 1912, the $5,000 note was reduced by Blackburn to $2,000. Blackburn then made his note for $2,000, dated January 6, 1912, payable to the Citizens National Bank in sixty days, and this note was substituted for the note previously made. The forty shares of Audubon National Bank stock were surrendered and two certificates issued in place thereof. One certificate for fifteen shares was issued to Blackburn and one certificate for twenty-five shares was issued to Thurber. The latter certificate was agreed to be held by Thurber as security

for the $2,000 note.  On February sixth the Audubon National Bank in the course of distributing its assets, sent its check to Thurber for $625, payable to his order.  On December 10, 1912, it sent its check for $250 to Thurber, payable to his order.  These checks were immediately upon receipt indorsed by Thurber and the proceeds credited on the $2,000 Blackburn note in the Citizens National Bank.

The witness Rockwood testified that in or about the month of August, 1911, acting for the Citizens National Bank, he notified Blackburn that the $5,000 note must be paid; that he told Blackburn that the Citizens National Bank insisted that if the note were renewed the Audubon National Bank stock must be transferred directly to it; that Blackburn refused to give such collateral to the Citizens National Bank; that he stated his willingness to transfer it to a third person; that he (Rockwood) suggested that the stock be transferred to Thurber; that this was finally agreed upon. The testimony of Rockwood as to this agreement is as follows: " Mr. Blackburn then said that he would have the stock issued to Mr. Thurber upon the understanding that he was given time; and that on the payment of his, Blackburn's, indebtedness, Mr. Thurber would re-transfer the stock to him, but that upon his failure to pay the indebtedness to the bank, then Thurber was authorized to transfer the stock to the bank to be enforced, the surplus, if any, to be returned to him, Mr. Blackburn." According to Rockwood this arrangement was assented to by the Citizens National Bank, by Thurber and by Blackburn, and thereupon the September renewal of the $5,000 note was made.  Rockwood further said that in January, 1912, when Blackburn paid $3,000 upon the note and gave the Citizens National Bank a new note for $2,000, Blackburn requested that a portion of the collateral be surrendered to him; that he stated that if this were done he (Rockwood) could notify Thurber to make immediate payment of all dividends received on the Audubon National Bank stock retained to the Citizens National Bank in reduction of his note; that this was agreed to; that the issuance of new certificates to Blackburn and Thurber in fifteen share and twenty-five share lots respectively was the result.

Upon each of the three trials of this action the plaintiff has contended that the twenty-five shares of stock apparently in the name of Thurber were in reality owned by the Citizens National Bank and that dividends paid to Thurber were in legal effect paid directly to that bank.  The defendant has always contended that the legal title to the shares was in Thurber, not as the cashier of the Citizens National Bank, but as an individual; that Thurber represented the real owner, Blackburn, and not the Citizens National Bank;

50

that as an intermediary between the two it was his duty to receive all dividends; that when dividends were received it became his duty to pay either to Blackburn or to the Citizens National Bank accordingly as the situation had developed; that his duty in this respect was regulated by the contract between Blackburn and the Citizens National Bank; that when the dividend checks in question were received by Thurber he performed an independent act in paying them over to the Citizens National Bank; that in doing so he acted as the agent of Blackburn; that the Citizens National Bank, therefore, never received the dividend moneys directly from the Audubon National Bank; that having received the moneys paid without knowledge that the same were improperly paid from assets it was not liable for their return.

The trial judge upon the first trial submitted to the jury the question whether Thurber was the agent of Blackburn or of the Citizens National Bank. The verdict of the jury to the effect that Thurber was the agent of Blackburn was set aside by the trial justice, and his order to that effect was affirmed by us. (192 App. Div. 935.) In so affirming we merely followed the usual rule that orders of such character, since they involve the exercise of discretion by the trial justice, will not be disturbed.

On the second trial the same trial justice directed a verdict for the plaintiff. The judgment entered upon the directed verdict was reversed by this court without opinion, and a new trial granted. (198 App. Div. 958.) The writer was not sitting as a member of the court which so decided. The reasons for the reversal, therefore, cannot be stated by him with the authority of actual knowledge. However, the conclusion is logically inescapable that this court thereby determined either (1) that the question whether Thurber acted for Blackburn in receiving the moneys or for the Citizens National Bank was one of fact to be decided by a jury; or (2) that as a matter of law the defendant was not, upon the case made, answerable to a judgment in favor of the plaintiff. The proof submitted upon the third trial now under consideration is substantially the same as previously submitted. The case has come back, therefore, with the question of fact, if there was such a question, determined in favor of the defendant. Whichever view, therefore, is taken of our prior decision, the conclusion cannot be avoided that, in the present situation of the case, that decision calls for an affirmance of the judgment.

The judgment and order should be affirmed, with costs.

All concur, except COCHRANE, P. J., dissenting.

Judgment and order affirmed, with costs.